UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 8:18-cr-597-TPB-JSS

JAVIER MONSERRATE VAZQUEZ
                                                      /

**REPORT AND RECOMMENDATION**

Defendant Javier Monserrate Vazquez (Defendant) moves to quash the trial subpoenas issued to his former counsel, H. Manuel Hernandez (Mr. Hernandez), and Mr. Hernandez's investigator, Antonio Rodriguez (Mr. Rodriguez). (Dkt. 543.) Mr. Hernandez also moves on behalf of himself and Mr. Rodriguez to quash the subpoenas. (Dkts. 545, 551) (Motions to Quash).[1] The Government opposes both Motions. (Dkt. 571.) The court held a hearing on the Motions to Quash on September 11, 2023, and held ex parte hearings on the Motions on September 20, 2023, and October 2, 2023. Upon consideration and for the reasons below, the undersigned recommends that the Motions to Quash be granted.

**BACKGROUND**

On December 12, 2018, a federal grand jury in the Middle District of Florida returned an indictment charging Defendant, along with a co-defendant, Manuel Burgos (Burgos), with one count of conspiring to possess with intent to distribute more

---

[1] Mr. Hernandez filed two copies of his Motion to Quash. (Dkts. 545, 551.) He included an attachment in the motion filed at Dkt. 551 that was not included in the motion filed at Dkt. 545.

than 500 grams of cocaine, in violation of 28 U.S.C. § 826 (Count One). (Dkt. 1.) On January 2, 2020, a federal grand jury in the Middle District of Florida returned a Superseding Indictment charging Defendant with an additional count of conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two). (Dkt. 88.) On April 15, 2021, a federal grand jury in the Middle District of Florida returned a Second Superseding Indictment, adding additional charges related to an alleged conspiracy against the United States, in violation of 18 U.S.C. § 371 (Count Three), aiding and abetting obstruction of justice, in violation of 18 U.S.C. § 1503 and § 2 (Count Four), tampering with a witness, in violation of 18 U.S.C. § 1512(b)(2)(C) and § 2 (Count Five), subornation of perjury, in violation of 18 U.S.C. § 1622 and § 2 (Count Six), and contempt of court, in violation of 21 U.S.C. § 853, 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. §2461(c)) (Count Seven). (Dkt. 219.) On July 22, 2021, a federal grand jury in the Middle District of Florida returned a Third Superseding Indictment, adding an additional charge against Defendant Burgos for aiding and abetting obstruction of justice (Count Eight). (Dkt. 282.)

In the Third Superseding Indictment, the United States charged Defendant in Count One with allegedly arranging to send illegal drugs from Puerto Rico to Florida via the United States Postal Service, and in Count Two, with having participated in a money laundering conspiracy based on the delivery of approximately $172,000 in cash to an undercover agent. (*Id.*) The remaining charges relate to Defendant's post-indictment conduct in which he is alleged to have obstructed the drug investigation and prosecution. (*Id.* at Counts Three through Seven.) Specifically, the Third

Superseding Indictment alleges that Defendant induced two individuals, his co-defendant Burgos and another individual named Alexis Gonzalez Rodriguez (Gonzalez), to sign false exculpatory affidavits for Defendant's benefit. (*Id.* at 4–5.) The Third Superseding Indictment further alleges that Defendant "Monserrate *and his defense counsel*" used one of those affidavits in support of various pretrial motions. (*Id.* at 5) (emphasis added). Gonzalez's affidavit was used to support Defendant's Motion to Suppress, Motion in Limine to Exclude Evidence of Other Acts, and Motion in Limine to Exclude Evidence and Objection to Admission of Co-Conspirator Hearsay. (Dkts. 157, 159, 160.)

In his affidavit, Gonzalez states that he has known Defendant since they grew up together in Puerto Rico. Gonzalez averred that he never informed law enforcement that Defendant was threatening him or that he was afraid of Defendant. Gonzalez further averred that he did not take seriously any threats Defendant made against him and considered them to be a heated family argument. Gonzalez states that those arguments stemmed from a business dispute, and that Gonzalez never told any law enforcement officers that Defendant was engaged in drug trafficking or money laundering. Moreover, in his affidavit, Gonzalez denied ever cooperating with law enforcement regarding an investigation into Defendant, states that he is not and never has been an informant for any government agency, and that he has not been subpoenaed or told that he will be a government witness in this case. (Dkt. 157-4.)

On October 22, 2021, the Government moved to disqualify Mr. Hernandez and Mr. Rodriguez, arguing that their "continued representation of Monserrate presents

3

an incurable conflict of interest and deprivation of Monserrate's Sixth Amendment right to effective assistance of counsel." (Dkt. 333 at 2.) According to the Government, Defendant used Mr. Hernandez's legal representation to obtain false exculpatory affidavits from his co-defendant Burgos and Alexis Gonzalez Rodriguez. The court granted the Government's motion and disqualified Mr. Hernandez from representing Defendant. (Dkts. 438, 462.)

On July 25, 2023, the Government issued a subpoena to Mr. Rodriguez, ordering him to appear and testify at trial. (Dkt. 543-1 at 5.) On August 14, 2023, the Government issued a subpoena to Mr. Hernandez, ordering him to appear and testify at trial and to produce certain documents. (*Id.* at 2.) The documents Mr. Hernandez was ordered to produce included:

> For the period beginning January 1, 2020, and continuing through on or about August 10, 2020:
>
> - All documents, notes, e-mails, and correspondence regarding the procurement and use of affidavits obtained from Alexis González Rodríguez and Manuel Burgos;
>
> For the period beginning January 1, 2020, and continuing through the end of the representation of Javier Monserrate Vazquez:
>
> - All invoices and records of payment for legal fees and services rendered on behalf of Javier Monserrate Vazquez, to include the source(s) of such payments.

(*Id.* at 4.)

Defendant, Mr. Hernandez, and Mr. Rodriguez move to quash those subpoenas and argue that the information sought is protected by the attorney-client privilege and

4

work product doctrine. (Dkts. 543, 545, 551.) Mr. Hernandez and Mr. Rodriguez requested a hearing on the issue, which the court held on September 11, 2023. (Dkt. 574.) At the September 11, 2023, hearing, Mr. Hernandez evinced an intention to assert his Fifth Amendment right and refuse to testify or provide the information sought by the Government's subpoena. The Government then moved to compel Mr. Hernandez to testify or provide other information pursuant to 18 U.S.C. § 6002. (Dkt. 576.) The court held a hearing on the motion (Dkt. 577) and granted it. (Dkt. 578.) The Government later moved to compel Mr. Rodriguez and co-defendant Burgos to testify pursuant to 18 U.S.C. § 6002 as well. (Dkts. 588, 589.) The court granted both of those motions. (Dkts. 590, 591.)

On September 20, 2023, and October 2, 2023, the court held ex parte hearings and conducted an in camera review of the testimony and documents from Mr. Hernandez and Mr. Rodriguez that the Government sought in its subpoenas.

## APPLICABLE STANDARDS

Subpoenas in criminal cases are governed by Federal Rule of Criminal Procedure 17. A subpoena duces tecum is "not intended to provide a means of discovery for criminal cases," but "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials[.]" *United States v. Nixon*, 418 U.S. 683, 698–99 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)) (footnote omitted). Under Rule 17(c), to compel production via a subpoena, the party seeking production must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* at 699–700 (footnote omitted). Thus, the party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.*

"'A subpoena that fails to satisfy these three requirements will be deemed unreasonable or oppressive and must be either quashed or modified.'" *United States v. Zahn*, No. 3:22-cr-23-BJD-MCR, 2022 WL 17811346, at *6 (M.D. Fla. Dec. 19, 2022) (quoting *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006)); *see also* Fed. R. Crim. P. 17(c)(2) ("On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."). Rule 17 does not define "unreasonable" or "oppressive," but "they have a common sense meaning, and courts finding a valid and specific privilege may quash subpoenas on that ground." *United States v. Cory*, 3:20-cr-99-MMH-JRK, 2021 WL 3709797, at *4 (M.D. Fla. Aug. 20, 2021) (quoting *United States v. Simmons*, 515 F. Supp. 3d 1359, 1364 (M.D. Ga. 2021)) (internal quotation marks omitted). *See also United States v. Hoeffner*, 254 F.R.D. 302, 308) (S.D. Tex. 2008) ("Therefore, because Request 6 seeks documents and correspondence of defense counsel reflecting work undertaken on the insureds' behalf in anticipation of litigation, and complying with this request would waive the attorney-client privilege as it pertains to The Hartford's insureds, the Court finds complying

with this request would be unreasonable and oppressive under Rule 17(c)(2)."); *United States v. Pinson*, NO. 2:19-cr-00250, 2020 WL 2830988, at *3 (S.D. W. Va. May 29, 2020) (quoting *In re Grand Jury*, 478 F.3d 581, 585 (4th Cir. 2007)) ("A subpoena may be 'unreasonable or oppressive' if it is 'abusive or harassing,' 'gravely' intrusive, 'overly vague,' or 'excessively broad,' or it seeks information that is irrelevant or privileged."); *United States v. Shanahan*, 252 F.R.D. 536, 540 (E.D. Mo. 2008) (citing Fed. R. Crim. P. 17(c)(2) and *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006)) ("A court may quash or modify a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive, or if the subpoena calls for privileged matter.").

## ANALYSIS

In the Motions to Quash, Defendant, Mr. Hernandez, and Mr. Rodriguez argue that the information sought by the Government's subpoenas is protected from disclosure by the attorney-client privilege and work-product doctrine. (Dkts. 543, 545.) The Government responds that the crime-fraud exception to those protections applies, thus the subpoenaed information is due to be disclosed. (Dkt. 571.)

### A. Fifth Amendment and Immunity

At the court's initial hearing on the Motions to Quash, Mr. Hernandez asserted his intention to invoke his Fifth Amendment right against self-incrimination in response to the Government's subpoenas. The Fifth Amendment "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably

7

believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972).

In response to Mr. Hernandez's stated intention to invoke his Fifth Amendment right, the Government moved to compel his testimony pursuant to 18 U.S.C. § 6002, which governs immunity for testifying witnesses. When a witness's testimony "may be necessary to the public interest[]" and the witness refuses to testify on Fifth Amendment grounds, "the United States attorney, with the approval of the Attorney General, may ask the district court to issue an order compelling the witness to testify under a grant of immunity." *United States v. Fletcher*, 347 F. App'x 507, 511 (11th Cir. 2009) (citing 18 U.S.C. § 6003).

"When the prosecutor properly makes such a request, the district court is required to issue the order to testify. An 'immunity order which is issued pursuant to 18 U.S.C. § 6003 is not a matter of judicial process or judicial discretion.'" *Id.* (citing 18 U.S.C. § 6003(a)). Therefore, courts have a limited role in applying the statute. Their only duty is "to ascertain whether the statutory requirements are complied with by the grand jury, the United States Attorney, and the Attorney General...." *Id.* (quoting *Corrugated Container Anti-Trust Litig.*, 620 F.2d 1086, 1094 (5th Cir.1980)) (internal quotation marks omitted).

Section 6003(b) provides:

> (b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, the Associate Attorney General, or any designated Assistant Attorney General or Deputy Assistant Attorney General,

8

> request an order under subsection (a) of this section when in his judgment—
>
> (1) the testimony or other information from such individual may be necessary to the public interest; and
>
> (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

Here, those statutory requirements were satisfied. The Government's Motion to Compel stated:

> 2. In the judgment of the undersigned, the testimony or other information from said witness may be necessary to the public interest;
>
> 3. In the judgment of the undersigned, said witness may refuse to testify or provide other information on the basis of his privilege against self-incrimination. In particular, on September 11, 2023, in a hearing before the Court, the witness represented that he will be asserting his Fifth Amendment rights pursuant to a trial subpoena for testimony and documents.
>
> 4. This application is made with the approval of an appropriate designee of the Assistant Attorney General in charge of the Criminal Division of the Department of Justice, pursuant to the authority vested by 18 U.S.C. § 6003 and 28 C.F.R § 0.175.

(Dkt. 576 at 1–2.) Accordingly, following Mr. Hernandez's invocation of his Fifth Amendment right, the court granted the Government's Motion to Compel and ordered Mr. Hernandez to "give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination as to all matters about which he may be questioned during the said proceeding and during any subsequent trials, if any, which may be related to such information and testimony."

9

(Dkt. 578.) In accordance with that order, Mr. Hernandez testified and produced documents at the court's September 20, 2023, and October 2, 2023, ex parte hearings.

Mr. Hernandez and Mr. Rodriguez continue to oppose the Government's subpoena seeking to compel their trial testimony. They have been granted immunity by the Government pursuant to 18 U.S.C. § 6003 and the court has compelled them to testify. Nevertheless, Mr. Hernandez and Mr. Rodriguez argue that the testimony and documents sought in the Government's trial subpoenas are protected from disclosure by the attorney-client privilege and the work product doctrine. *See In re Grand Jury Proc. 88-9 (MIA)*, 899 F.2d 1039, 1041 (11th Cir. 1990) (considering assertion of attorney-client privilege raised by attorney following testimony given subject to grant of use immunity under 18 U.S.C. §§ 6002–6003); *Doe v. United States*, 487 U.S. 201, 213–14, 214 n.13 (1988) (rejecting argument that court's articulation of Fifth Amendment protections gives too much power to the government because "there are other protections against governmental efforts to compel an unwilling suspect to cooperate in an investigation," including the attorney-client privilege). Thus, Mr. Hernandez and Mr. Rodriquez maintain that the trial subpoenas should be quashed pursuant to the attorney-client privilege and the work product doctrine.

B. **Privileges and the Crime-Fraud Exception**

"The attorney-client privilege attaches to all 'communications made in confidence by a client to an attorney for the purposes of securing legal advice or assistance.'" *In re Grand Jury Subpoena*, 2 F.4th 1339, 1345 (11th Cir. 2021) (quoting *In re Grand Jury (G.J. No. 87-03-A)*, 845 F.2d 896, 897 (11th Cir. 1988)). The privilege

survives even after the attorney-client relationship has ended. *See generally Swidler v. Berlin*, 524 U.S. 399 (1998).

Testimony and documents sought in a subpoena may also be protected by the attorney work product doctrine. There are two categories of work product. *Zahn*, 2022 WL 17811346, at *7. "Qualified" work product relates to an attorney's factual investigations, while "absolute" or "opinion" work product relates to an attorney's mental impressions. *Id.* (citing *Doubleday v. Ruh*, 149 F.R.D. 601, 607 (E.D. Cal. 1993)). "A party seeking 'qualified' work product must show a 'substantial need' for the materials in the preparation of the party's case and an inability to obtain the information from other sources without undue hardship." *Id.* (quoting *Cozort v. State Farm Mut. Auto. Ins. Co.*, 233 F.R.D. 674, 676 (M.D. Fla. 2005)). A party seeking absolute or opinion work product, on the other hand, must show that "an attorney's mental impressions are at issue and there is a compelling need for the material." *Id.* (quoting *Doubleday*, 149 F.R.D. at 608).

However, neither the attorney-client privilege nor the work product privilege applies to communications made in furtherance of a crime or fraud. *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018). The crime-fraud exception has two parts:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in

11

> furtherance of the criminal or fraudulent activity or was closely related to it.

*Id.* (quoting *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987)).

The first part of the exception "is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *In re Grand Jury Investigation*, 842 F.2d at 1226 (collecting cases). That evidence must be based in fact, "for mere allegations of criminality are insufficient to warrant application of the exception." *Id.* (collecting cases).

Here, the Government does not dispute that the testimony and documents sought in its subpoenas are subject to the attorney-client privilege and work product doctrine. (Dkt. 571 at 3–5.) Instead, the Government argues that the crime-fraud exception applies to pierce those protections. Therefore, as the parties agree that Defendant and Mr. Hernandez have an attorney-client relationship and that the documents sought in the subpoenas constitute attorney work product,[2] the court will consider the application of the crime-fraud exception.

The violations that the Government argues support invocation of the crime-fraud exception are those found in the Third Superseding Indictment: conspiracy to defraud the United States (Count Three); obstruction of justice (Counts Four and Eight); witness tampering (Count Five); subornation of perjury (Count Six); and

---

[2] The Government contends that fee information is not subject to the attorney-client privilege and work product doctrine, and is thus not protected from disclosure. (Dkt. 571 at 8–9.) This issue is discussed below.

12

Contempt of Court (Count Seven). (Dkt. 282.) In addition, the Government argues that general fraud committed by Defendant supports invocation of the exception.

The court conducted two ex parte hearings to determine whether the testimony and documents provided by Mr. Hernandez would reveal evidence that satisfies the two prongs of the crime-fraud exception. *See United States v. Zolin*, 491 U.S. 554, 572–73 (1989) (quoting *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo.1982)) ("Before engaging in in camera review to determine the applicability of the crime-fraud exception, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person[]' that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.").

The court heard three and a half hours of testimony from Mr. Hernandez and reviewed the transcript of that testimony. The testimony generally addressed how Defendant came to retain Mr. Hernandez as counsel, the process by which Mr. Hernandez acquired the two affidavits that the Government claims are false, and Mr. Hernandez's reasons for why he believes the information in those affidavits is trustworthy. The court also reviewed nearly 600 pages of documents provided by Mr. Hernandez, including the documents and emails he described as his client file. The documents comprise several categories, including: correspondence between the Government and Mr. Hernandez; correspondence between Defendant and Mr. Hernandez; correspondence between Mr. Hernandez and his investigator, Mr. Rodriguez; fees and expense deposits; client background notes compiled by Mr.

Hernandez's paralegal; and notes and memos written by Mr. Rodriguez describing various interviews he conducted.

Upon review of the testimony and documents, the court concludes that there has not been "a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *In re Grand Jury Investigation*, 842 F.2d at 1226. Specifically, the testimony and documents do not establish the elements of Counts Three through Eight of the Third Superseding Indictment.[3] Nor do they establish that Defendant was engaged in general fraud or lying in the acquisition of the affidavits from Gonzalez and Burgos. Rather, the documents related to the affidavits generally mirror the information provided in the affidavits, including the information found in Gonzalez's affidavit discussed above.

Nevertheless, the Government also argues in its Response to the Motions to Quash that the first prong of the crime-fraud exception "is satisfied through the return of the Third Superseding Indictment." (Dkt. 571 at 4.) The Government provides no controlling authority stating that an indictment alone may satisfy the first prong of the crime-fraud exception. The only case law the Government cites for this proposition is *United States v. Cannone*, 528 F.2d 296, 302 n.6 (2d Cir. 1975). *Cannone* does not support the proposition the Government advances in its response. Instead, *Cannone* addressed whether the government could keep secret the identity of a testifying witness

---

[3] The jury will make the ultimate determination concerning this issue. The Government may well have evidence to support the charges at issue on these counts. The court finds only that the testimony and records reviewed do not include proof supporting the crime-fraud exception.

where two defendants had been indicted for beating a prior grand jury witness. *Id.* at 302. The court stated that, "[w]hile by no means conclusive, the issuance of an indictment is certainly probative of the likely validity of its charges[.]" *Id.* at 302 n.6. Thus, the court held that the district court had abused its discretion by granting the defense's request for the identity of the government's testifying witness, despite the "likely validity" of the charges against two defendants for beating a grand jury witness. *Id.* at 302. The court's holding was not in the context of the crime-fraud exception and whether it might apply to pierce the attorney-client privilege or work product doctrine. The court did not discuss the application of the crime-fraud exception standard and did not comment concerning whether the return of an indictment alone would satisfy that standard. Thus, the case cited by the Government does not support a conclusion that an indictment alone may satisfy the first prong of the crime-fraud exception.

The Government's argument that an indictment alone can support the first prong of the crime-fraud exception is at odds with Eleventh Circuit case law. An indictment is "[t]he formal written accusation of a crime, made by a grand jury and presented to a court for prosecution against the accused person." *Indictment*, *Black's Law Dictionary* (10th ed. 2014.) An indictment alone cannot satisfy the requirement because it is an accusation, and "mere allegations of criminality are insufficient to warrant application of the exception." *In re Grand Jury Investigation*, 842 F.2d at 1226. *See also Clark v. United States*, 289 U.S. 1, 15 (1933) ("It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud. . . . To drive the privilege away, there must be something to give colour to the charge;

15

there must be prima facie evidence that it has some foundation in fact.") (internal quotation marks and citations omitted); *In re Int's Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) (citing *In re Grand Jury Investigation*, 599 F.2d 1224, 1232 (3d Cir. 1979) ("We find nothing in the record, however, of fraud except the plaintiff's allegations.  While the pleadings in this case are unusually detailed, they are not evidence to make a prima facie case."); *In re Vargas*, 723 F.2d 1461, 1467 (10th Cir 1983) (quoting *Clark*, 289 U.S. at 15) ("Petitioner correctly argues that the government must do more than allege that an attorney is a target of a grand jury investigation to vitiate the privilege.  Before the privilege is lost 'there must be *prima facie* evidence that [the allegation of attorney participation in a crime or fraud] has some foundation in fact.'") (alteration in original).

Accordingly, there has not been "a prima facie showing that [Defendant] was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice." *Drummond Co., Inc.*, 885 F.3d at 1335.  Therefore, the first prong of the crime-fraud exception is not satisfied.

The second prong of the crime-fraud exception requires "a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *In re Grand Jury Investigation*, 842 F.2d at 1227.  Put another way, the Government must show "that the attorney's assistance was obtained in furtherance of

16

the criminal or fraudulent activity or was closely related to it." *In re Grand Jury Subpoena*, 2 F.4th at 1349 (quoting *id.* at 1226) (internal quotation marks omitted).

The Government cannot satisfy this prong because, as discussed above, there has not been a prima facie showing, based on the evidence presented at the ex parte hearings, that the elements of any of the crimes in the Third Superseding Indictment are met. Therefore, the Government cannot show "that the communication is related to the criminal or fraudulent activity established under the first prong[]" because no such activity was established. *In re Grand Jury Investigation*, 842 F.2d at 1227.

The Government similarly maintains that the court should look to the indictment to establish the second prong of the crime-fraud exception. (Dkt. 571 at 4.) As discussed above, an indictment alone cannot satisfy the requirement because it is an accusation, and "mere allegations of criminality are insufficient to warrant application of the exception." *In re Grand Jury Investigation*, 842 F.2d at 1226.

Thus, the crime-fraud exception has not been satisfied. Accordingly, the attorney client privilege and work product protections apply to the subpoenas issued by the Government. Defendant's and Mr. Hernandez's Motions to Quash are recommended to be granted as to the Government's subpoenas seeking trial testimony and documents from Mr. Hernandez and Mr. Rodriguez.

However, the Government's subpoena to Mr. Hernandez requests "[a]ll invoices and records of payment for legal fees and services rendered on behalf of [Defendant], to include the source(s) of such payments." Matters involving attorney's fees are not normally privileged. *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir.

17

1992) (collecting cases). Nevertheless, Defendant and Mr. Hernandez argue that fee information is irrelevant and outside the scope of this case. (Dkt. 543 at 11–12; Dkt. 545 at 3–4.) The Government responds that fee information is relevant to the conspiracy to obstruct justice, and that it intends to present evidence at trial that illicit cash deposits were funneled through third-parties before being paid to Mr. Hernandez for ostensibly legitimate legal fees. (Dkt. 571 at 8–9.)

Mr. Hernandez also argues that the fee information should not be disclosed because of the "last link" doctrine. (Dkt. 545 at 4.) Normally, the identity of a client and the payment of fees are non-privileged information. *Leventhal*, 961 F.2d at 940. The last link doctrine expands the protection of the attorney-client privilege to encompass those items. *Id.* (quoting *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d at 1043). The doctrine only applies "where the disclosure of fee information would give the identity of a previously undisclosed client/suspect." *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d at 1043 (quoting *In re Grand Jury Subpoena of Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982)) (internal quotation marks omitted). Here, the identity of the client, Defendant, is already known to all parties. Therefore, disclosure of fee information would not reveal Defendant's otherwise unknown identity, so the last link doctrine is inapplicable. *Leventhal*, 961 F.2d at 941 (declining to apply the last link doctrine because the prosecutors were already aware of the clients' identities).

Moreover, Mr. Hernandez indicated at the court's ex parte hearing that, should the court grant the Motions to Quash, he would likely withdraw his objection to turning over his fee information. Because fee information is not privileged, *Leventhal*,

961 F.2d at 940, and because the last link doctrine does not apply, the fee information sought in the Government's subpoena for documents to Mr. Hernandez is discoverable.

Accordingly, the undersigned **RECOMMENDS** that the Motions to Quash (Dkts. 543, 545, 551) be **GRANTED in part** and **DENIED in part**. Mr. Hernandez shall produce all invoices and records of payment for legal fees and services rendered on behalf of Defendant Monserrate Vazquez to the Government by October 5, 2023.

**IT IS SO REPORTED** in Tampa, Florida, on October 3, 2023.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has 14 days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Thomas P. Barber
Counsel of Record